UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

            Plaintiff,

CASE NO. 13-20166
HON. LAWRENCE P. ZATKOFF

vs.

JOSE SEDANO-GARCIA,

            Defendant.
                                         /

**OPINION AND ORDER**

AT A SESSION of said Court, held in the
United States Courthouse, in the City of Port Huron,
State of Michigan, on April 5, 2013

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

Defendant Jose Sedano-Garcia is charged with illegal re-entry of a removed alien in violation of 8 U.S.C. § 1326(a). Detention hearings were held between February 20, 2013 and February 27, 2013, following which Defendant was released on bond. Defendant is currently held in administrative detention by Immigration and Customs Enforcement ("ICE"). Pursuant to 18 U.S.C. § 3142(f)(2)(A), the government has filed a Motion to Revoke Bond (Docket #24), wherein the government seeks a court order to detain Defendant criminally. Defendant has filed a response, and the government has filed a reply. As the Court finds that the facts and legal arguments pertinent to the Motion are adequately presented in the parties' papers and the transcripts of the detention hearings held between February 20, 2013 and February 27, 2013, the Court finds that the decisional process will not be aided by oral arguments.[1] Therefore, pursuant to E.D. Mich. Local R. 7.1(f)(2),

---

[1] As noted above, Defendant has been afforded a detention hearing; in fact, he appeared in front of both a magistrate judge and another district judge. The Court has received and reviewed the recorded testimony of such hearings and, as such, the Court need not conduct an additional hearing regarding this matter. *See, e.g., U.S. v. Reese*, 142 F.3d 438, 1998 WL 80170 (6th Cir.

it is hereby ORDERED that the Motion be resolved on the briefs submitted, without this Court entertaining additional oral arguments. For the reasons that follow, the Motion to Revoke is GRANTED.

## II. BACKGROUND

Defendant is a citizen of Mexico and has no legal status in the United States. On December 9, 2003, Defendant attempted to enter the United States illegally near El Paso, Texas, without presenting himself for inspection at a designated port of entry. Defendant was caught and excluded from the United States. A few days later, Defendant again attempted to enter the United States illegally near El Paso Texas. Defendant was caught, prosecuted, and convicted under 8 U.S.C. § 1325 for illegal entry into the United States. Defendant was served with an I-871 Reinstatement of Final Deportation Order in El Paso, Texas, and excluded from the United States on December 31, 2003. Thereafter, on an unspecified date and location Defendant committed another crime by once again entering the United States illegally. Defendant ultimately traveled to Michigan.

On February 16, 2013, Defendant was traveling by automobile inside the state of Michigan and unintentionally ended up on the Blue Water Bridge in Port Huron, Michigan. Defendant had no choice but to face Customs and Border Protection Officials when re-entering the United States. Record checks and an interview of Defendant revealed Defendant was an illegal alien who: (a) had previously been removed from the United States, and (b) thereafter entered the United States without inspection or parole in March 2004. Further record checks revealed Defendant did not receive prior permission or approval from the Attorney General or the Secretary of Homeland Security to re-enter the United States. As a result, Defendant was charged in a criminal complaint with illegal re-entry of a removed alien in violation of 8 U.S.C. § 1326(a).

On February 20, 2013, Defendant appeared for his initial appearance on the criminal

---

1998) (Table); *U.S. v. Cummins*, 833 F.2d 1014, 1987 WL 39054 (6th Cir. 1987)(Table); *U.S. v. Thornton*, 787 F.2d 594, 1986 WL 16642 (6th Cir. 1986) (Table).

complaint. Defendant was advised there was an immigration detainer in place by ICE over Defendant, meaning that even if Defendant was released on bond, Defendant would be held in administrative custody and would not receive any credit for time served in administrative detention. Defendant nonetheless requested a detention hearing. The government informed Defendant it would be seeking detention based on Defendant being a risk of flight.

On February 21, 2013, a detention hearing was held before Magistrate Judge Laurie J. Michelson. Based on Defendant's request, the court adjourned the detention hearing until February 22, 2013, to provide Defendant an opportunity to be interviewed by pre-trial services regarding family ties, though no family members were in the courtroom. On February 22, 2013, Defendant's detention hearing resumed and the court took note of pre-trial services' report, which at the time recommended detention and stated Defendant had a sibling in the area that lawfully resided in the United States. Once again, no one from Defendant's family was present in the court room. The court nonetheless considered Defendant's sibling as a possible third-party custodian for Defendant's release on bond. The detention hearing was adjourned to provide Defendant more time to have his sibling appear in court. On February 27, 2013, the detention hearing resumed and Defendant's brother appeared in court. After briefly questioning Defendant's brother, the court released Defendant on bond and appointed Defendant's brother as Defendant's third-party custodian. The court provided reasoning for the bond release order by stating *inter alia* that Defendant had lived in the district for about eleven years, lived with his brother and sister-in-law, and "worked at the same place and maintain[ed] steady employment for several years." (See Government's Motion - Exhibit A, Continuation of Detention Hearing, February 27, 2013, Transcript p.10 L. 19-24.

On February 27, 2013, the government appealed Magistrate Judge Michelson's bond release order and the parties proceeded before United States District Judge Paul D. Borman regarding the appeal of the bond order. Judge Borman found the nature and circumstances of the offense were those of a felony offense and that the weight of the evidence was strong. As to the characteristics of Defendant, Judge Borman noted, "I think that the characteristics in the last nine years of this

individual are that he has been here; that he's had no contacts with the law, and significantly, when he was arrested, he did not have false ID. That is something that would have tipped the scale, I believe, in favor of detention." (See Government's Motion - Exhibit B, Appeal of Bond Order Hearing, February 27, 2013, Transcript p. 25, L. 14-19). Due to the immigration detainer, Defendant was taken into administrative detention by ICE, where Defendant apparently remains.

On March 5, 2013, Defendant was indicted on a one count indictment for unlawful re-entry of a removed alien in violation of 8 U.S.C. § 1326(a). On March 21, 2013, the government obtained new information regarding Defendant's fraudulent use of identity and immigration documents. Specifically, the government discovered that Defendant, who is an illegal alien, sought and obtained employment by submitting a false Legal Permanent Resident card and a false Social Security card on his I-9 employment form. (See Government's Motion - Exhibit C, I-9 Employment Application for Jose Sedano-Garcia; see Government's Motion - Exhibit D, Memorandum from Homeland Security Investigations Special Agent Matthew Sabo). Based on this new information the government filed this Motion to Revoke Bond, wherein it requests that the Court criminally detain Defendant based on this new information.

### III. ANALYSIS

18 U.S.C. § 3142(b) provides that a "judicial officer shall order the pretrial release of the person ... unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." Under 18 U.S.C. 3142(f), a detention hearing may be reopened if: (1) new information exists that was unknown to the movant at the time of the hearing; and (2) the new information has a material bearing on the issue of whether there are conditions of release that will reasonably assure a defendant's appearance at trial and the safety of any other person in the community. 18 U.S.C. § 3142(f)(2)(B). For the reasons discussed below, based on the new information obtained by the government on March 21, 2013, several weeks after Defendant's bond detention hearings were held,

4

which information this Court finds to have a material bearing on the flight risk of Defendant, this Court concludes that Defendant's detention hearing should be, and hereby is, reopened.

In this case, at the time Defendant's release on bond was granted, the presiding magistrate judge and district judge who considered whether to release Defendant on bond were presented with no evidence of criminal activity by Defendant, other than the conduct that supported the illegal re-entry crime with which he is currently charged. Notably, as Judge Borman observed during one of Defendant's prior detention hearings, Defendant has "had no contacts with the law, and significantly, when he was arrested, he did not have false ID. That is something that would have tipped the scale, I believe, in favor of detention."

As the new information offered by the government demonstrates, however, the observations offered by Judge Borman can no longer be considered accurate. As the exhibits to the government's motion reveal, Defendant presented a false Legal Permanent Resident card and a false Social Security card when he sought/completed/obtained his I-9 Employment Form. In doing so, Defendant likely participated in and/or committed several crimes, including identity theft, document fraud and uttering false statements. This Court finds that the use of false identification to obtain employment wholly undermines the basis of Judge Borman decision to release Defendant on bond.

Looking at the whole record, this Court finds Defendant to be a flight risk. This Court's conclusion is based on: (1) the new facts regarding Defendant's use of false identification to obtain and maintain employment, information which clearly constitutes a change in circumstances as required by 18 U.S.C. § 3142(f), (2) Defendant's history of entering and re-entering the United States without authorization, (3) the limited family contacts (or other contacts) in this judicial district, and (4) the absence of any other reasons that would obligate or dictate that Defendant remain in this judicial district if he were to remain on bond. For these reasons, this Court determines that continuing Defendant's bond will not best serve the interests of justice, nor would it "reasonably assure the appearance of [Defendant] as required[.]" 18 U.S.C. § 3142(b).

Defendant argues that the government has not met its burden under 18 U.S.C. §

3142(f)(2)(B) to identify information that: (1) was not known at the time of the initial hearing, and (2) has a material bearing on the issues related to detention. *Citing United States v. Sandles,* 9 Fed Appx. 377, 379 (6th Cir. 2001) (noting that the information must be both "new" and must be sufficiently material to the issues flight risk and/or dangerousness). Defendant contends that, in the Motion to Revoke Bond, the government relies only on facts that could have been discovered before the hearing and that such facts are not material to the issue of Defendant's detention. As discussed above, this Court finds the facts produced by the government in its Motion to Revoke to be both relevant and material, as such facts demonstrate to this Court that Defendant is a flight risk.

The Court also finds that 18 U.S.C. § 3142 does not bar the government from reopening a detention hearing because it "could have" discovered the facts at some earlier time. It is true that the information is not new in the temporal sense (as Defendant's production of fraudulent documents occurred in 2009). This Court, however, is not going to require, as Defendant proposes, the government to uncover all of a charged individual's past activity before charging the individual and having such individual arraigned. The new facts produced by the government in support of its Motion to Revoke Bond are not facts that had anything to do with the crime with which Defendant has been charged in this case (*i.e.*, illegal re-entry of a removed alien). Rather, the new facts produced by the government in its Motion to Revoke Bond constitute activity wholly unrelated to the crime with which Defendant is charged, though such activity may constitute the basis for charging him with other crimes. Accordingly, the Court concludes that the information provided by the government in support of its Motion to Revoke Bond consists of facts "not known at the initial hearing" and can be considered by this Court in deciding the Motion to Revoke Bond.

For the foregoing reasons, the Court shall revoke Defendant's bond and order that Defendant be turned over to the United States Marshals, effective immediately.

## V. CONCLUSION

Accordingly, and for the reasons set forth above, the government's Motion to Revoke Bond (Docket #24) is GRANTED. IT IS HEREBY ORDERED that Defendant's bond is hereby REVOKED and that Defendant be turned over to the United States Marshals, effective immediately.

IT IS SO ORDERED.

                                            s/Lawrence P. Zatkoff
                                            LAWRENCE P. ZATKOFF
Date: April 5, 2013                    UNITED STATES DISTRICT JUDGE